# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
        JUDGE

## <u>LETTER OPINION</u>

June 13, 2011

Frederick Benno Polak
Post, Polak, Goodsell, MacNeill & Strauchler, PA
425 Eagle Rock Avenue, Suite 200
Roseland, NJ 07068
        (*Attorney for Plaintiffs*)

Eric L. Harrison
Methfessel & Werbel, PC
3 Ethel Road, Suite 300
P.O. Box 3012
Edison, NJ 08818

James Francis Clarkin, III
Clarkin & Vignuolo
1100 Centennial Avenue, Suite 203
Piscataway, NJ 08854
        (*Attorneys for Defendant*)

RE:   **Lapid Ventures, LLC et al. v. Township of Piscataway**
        **Civ. No. 10-6219 (WJM)**

Dear Counsel:

This matter comes before the Court on the motion for a preliminary injunction filed by Plaintiffs Lapid Ventures, LLC, John Doe and Jane Doe, as well as on the cross motion to dismiss filed by Defendant Township of Piscataway.  There was no oral argument. Fed. R. Civ. P. 78. For the reasons stated below, the motion for a preliminary

injunction is **DENIED**, and the motion to dismiss is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

Plaintiff Lapid Ventures, LLC ("Lapid" or "Plaintiff") is a company planning to construct a skilled nursing home facility ("the Facility") in the Township of Piscataway ("Piscataway").  Plaintiffs John Doe and Jane Doe ("Doe Plaintiffs") are the future residents of the Facility.  Plaintiffs' claims arise out of an ordinance adopted by Piscataway that amended Piscataway's land use ordinance.

In late 2009, Lapid became the owner of a piece of property (the "Property") on the bank of the Raritan River, on which it planned to build the Facility.  (Pls.' Moving Br. at 2.)  The Property is located in an area where, under Chapter XXI, Section 1003 of the Piscataway Land Use Ordinance, hospitals (including skilled nursing homes) are permitted as conditional uses.  (Compl. ¶ 7.)  However, that ordinance restricts the maximum lot size to five acres, and the Property is 5.53 acres.  (Compl. ¶ 8.)  Therefore, Lapid filed an application with the Piscataway Zoning Board of Adjustment ("Zoning Board") for a variance in September 2009.  (Compl. ¶ 8.)  Correspondence between Lapid and the Zoning Board continued through October and November of 2009, regarding whether or not Lapid's application was complete, or whether additional variances needed to be requested.  (Compl. ¶¶ 9-12.)  Due to this correspondence, Lapid chose to withdraw its application and revise its plan.  (Compl. ¶ 13.)  Lapid then submitted its revised plan and supporting documents to the Zoning Board on January 15, 2010.  (*Id.*)

On January 26, 2010, the Piscataway Township Council introduced Ordinance No. 10-03 ("Ordinance 10-03") which modified the Piscataway Land Use Ordinance to require that "[n]o portion of a hospital, nor any parking facility serving such use shall be located within 500 feet of the bank of the Raritan River."  (Compl. ¶ 18.)  Ordinance 10-03 was then adopted on February 16, 2010.  (*Id.*)  The stated reason for the ordinance was concern with flooding of the Raritan River.  (Compl. ¶ 19.)  On February 22, 2010, the Zoning Board's Supervisor of Planning advised Lapid that it would now need an additional variance, since the proposed Facility would be within 500 feet of the bank of the Raritan River, in violation of Ordinance 10-03.  (Compl. ¶ 24.)  On April 14, 2010, Lapid filed a revised application requesting the additional variance, and by letter dated May 5, 2010, the Zoning Board notified Lapid that a hearing was scheduled for August 12, 2010.  (Compl. ¶ 25.)  However, on August 11, 2010, Lapid requested an adjournment of the hearing in order to prepare to respond to comments submitted by various Piscataway officials in opposition to the Facility.  (Compl. ¶¶ 26-30.)  On November 2, 2010, Lapid wrote to the Piscataway Township Attorney, claiming that Ordinance 10-03

2

was passed with the intent to discriminate against the proposed Facility in violation of various laws, and requested that Piscataway make reasonable accommodations for the Facility.  (Compl. ¶ 31.)  The Township Attorney responded on November 16, 2010, that he would review Lapid's position.  (Compl. ¶ 32.)

Lapid then filed suit on November 30, 2010.  After obtaining flood hazard permits from the New Jersey Department of Environmental Protection ("DEP") on February 11, 2011, Lapid filed the instant motion for a preliminary injunction to enjoin Piscataway from enforcing Ordinance 10-03.  Notably, the Zoning Board has yet to hold a hearing or make any final determination regarding Lapid's variance application, which still also requires a "use" variance from maximum lot size.  (*See* Compl. ¶ 13.)  In response to Lapid's motion for a preliminary injunction, Defendant filed the instant motion to dismiss.

## II.    DISCUSSION

Plaintiffs' complaint alleges that Defendant's conduct constitutes discrimination in violation of the following statutes: (1) the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHAA"); (2) the Americans with Disabilities Act ("ADA"); (3) the Rehabilitation Act; (4) the New Jersey Law Against Discrimination, ("NJLAD"); and (5) the New Jersey Municipal Land Use Law ("MLUL").  Additionally, Plaintiffs' motion for a preliminary injunction alleges that (1) their claims have compelling legal merits; (2) irreparable harm is presumed where the underlying statute (here the FHAA) provides for injunctive relief; (3) there will be no harm to Piscataway since the New Jersey DEP has already issued permits approving the development of the Facility; and (4) granting the preliminary injunction will promote the general welfare.

In response, Defendant has opposed the preliminary injunction and has filed a cross-motion to dismiss the Complaint.  Defendant argues that the matter should be dismissed under the *Younger* abstention doctrine, alleging: (1) Plaintiff's pending variance application constitutes an ongoing state adjudicative proceeding; (2) zoning decisions are traditionally considered important state interests; and (3) Plaintiff will have a chance to raise any constitutional claims during the state proceeding.

### A.    Defendant's Motion to Dismiss

#### 1.    Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.

The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true,[1] the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). The factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see Twombly*, 550 U.S. at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). Furthermore, the Plaintiff must "provide the 'grounds' of his 'entitlement to relief,'" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While "[t]he plausibility standard is not akin to a 'probability requirement'...it asks for more than a sheer possibility..." *Iqbal*, 129 S.Ct. at 1949 (2009).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

## 2.    *Younger* Abstention

Defendant's argument as to dismissal is that the Court should abstain under the *Younger* abstention doctrine. Under *Younger v. Harris*, 401 U.S. 37 (1971), federal courts are counseled to abstain from interfering with ongoing state proceedings. While *Younger* only addressed ongoing state criminal judicial proceedings, the *Younger* doctrine has since been expanded to include civil proceedings and state administrative proceedings. *See Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982) (expanding the scope of *Younger* abstention to include state administrative proceedings). To determine whether a federal court should abstain under *Younger*, the Supreme Court has set forth a three-part test: (1) there must be an ongoing

---

[1] This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

state proceeding that is judicial in nature; (2) the proceeding must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise a constitutional challenge.  *Id.* at 432.

In determining whether proceedings are "judicial in nature," courts look to whether they (1) are initiated by a complaint, (2) are adjudicative in nature, (3) are governed by court rules or rules of procedure, and (4) employ legal burdens of proof.  17A Moore's Federal Practice § 122.05.  When determining whether *Younger* abstention applies to a state administrative proceeding, courts must also look to whether the proceeding is coercive or remedial.  *Id.*  A pending administrative proceeding that is purely remedial in nature does not require abstention, as plaintiffs are generally not required to exhaust all administrative remedies before adjudicating a case in federal court.  *See Ohio Civil Rights Comm'n v. Dayton Christian Schools. Inc.*, 477 U.S. 619, 627 n.2 (1986) (distinguishing between the need for *Younger* abstention for coercive administrative proceedings and a litigant's right not to exhaust remedial administrative proceedings before bringing suit under 42 U.S.C. § 1983); *see also Tinson v. Pennsylvania*, No. CIV.A. 93-3985, 1995 WL 581978, at *4 (E.D. Pa. Oct. 2, 1995) (rejecting abstention argument in Section 1983 action where state court action was initiated by federal plaintiffs and was remedial); *Independence Public Media of Phila. v. Pennsylvania Pub. Television Network Comm'n*, 813 F. Supp. 335, 342 (E.D. Pa. 1993) (holding that where state action was remedial and initiated by federal plaintiffs, *Younger* abstention was not appropriate).

Moore's Federal Practice identifies the following relevant factors to consider in determining whether an administrative proceeding is coercive or remedial: (1) whether the federal plaintiff's participation in the state administrative proceeding was mandatory or an option available to the federal plaintiff to redress a wrong inflicted by the state; (2) whether the state proceeding is itself the wrong the federal plaintiff seeks to correct; and (3) whether the state administrative proceeding was initiated to punish the federal plaintiff for an alleged bad act. 17A Moore's Federal Practice § 122.05.  For example, the Supreme Court has held that bar disciplinary proceedings and sex discrimination proceedings constitute "coercive" administrative proceedings implicating *Younger* abstention.  *See Middlesex County Ethics Comm.*, 457 U.S. at 433-434 ("It is clear beyond doubt that the New Jersey Supreme Court considers its bar disciplinary proceedings as 'judicial in nature.' As such, the proceedings are of a character to warrant federal-court deference."); *Ohio Civil Rights Comm'n*, 477 U.S. at 627 (finding that an ethics committee's administrative proceedings were 'judicial in nature').  These types of proceedings are instigated by a complaint filed with the administrative agency and are intended to punish the federal plaintiff, making them coercive and thereby "judicial in nature."

The Zoning Board hearing at issue here is generally described as "quasi-judicial" in nature. *See Cassinari v. Union City*, 1 N.J. Super. 219, 222 (App.Div. 1949) (where a variance is sought, "proceedings may be had before the Board of Adjustment which acts quasi-judicially in accordance with prescribed standards"). However, though the proceeding may be "quasi-judicial," since Lapid brought the request for a variance to the Zoning Board and is not being punished for any bad act, it is remedial in nature. Since the pending Zoning Board proceeding is not a coercive judicial proceeding, it is not the type of administrative proceeding subject to *Younger* abstention. *See O'Neill v. City of Philadelphia*, 32 F.3d 785, 791 n.13 (3d Cir. 1994) (Younger abstention applies to an "administrative proceedings initiated by the State, before a state forum, to enforce a violation of state law," but not to a "remedial action brought by the plaintiff to vindicate a wrong which had been inflicted by the State.").

### 3.     Ripeness

While Defendant's *Younger* abstention argument fails, the Court will also address the related requirement that the dispute be "ripe for adjudication," though the parties did not raise it. *See Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 535 (3d Cir. 1988) ("This court has recognized that considerations of ripeness are sufficiently important that we are required to raise the issue *sua sponte*[.]"). In "as-applied" challenges to a new zoning ordinance, the claim is not ripe "until the zoning authorities have had an opportunity to arrive at a final, definitive position regarding how they will apply the regulations at issue to the particular land in question." *Sameric Corp. of DE v. City of Philadelphia*, 142 F.3d 582 (3d Cir. 1998); *see also Acierno v. Mitchell*, 6 F.3d 970, 974-75 (3d Cir. 1993); *Taylor Investment, Ltd v. Upper Darby Twp.*, 983 F.2d 1285 (3d Cir. 1993). Since at this time no final decision has been made by the Zoning Board, any such "as-applied" claims are premature and not yet ripe for adjudication under this "finality" rule. *See Congregation Anshei Roosevelt v. Planning & Zoning Bd. of Roosevelt*, Civ. No. 07-4109, 2008 U.S. Dist. LEXIS 63994, at *31 (D.N.J. Aug. 20, 2008) ("In cases involving land-use decisions, a property owner does not have a ripe constitutional claim until the zoning authorities have had 'an opportunity to arrive at a final, definitive position regarding how they will apply the regulations at issue to the particular land in question.'" (quoting *Sameric*, 142 F.3d at 597).

However, if Plaintiffs are instead only challenging the new ordinance on its face, the "final decision" requirement does not apply. *See County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (finality rule does not apply "to facial attacks on a zoning ordinance"). Therefore, any portions of Plaintiffs' claims that are simply a facial challenge to Ordinance 10-03, having nothing to do with how it is applied, can be considered ripe. Essentially, then, to determine the ripeness of each count, the Court must

look to whether the claim is a facial or as-applied challenge to Zoning Ordinance 10-03. *See County Concrete*, 442 F.3d at 166.

### 4.    Counts 1, 2 and 3 – Discrimination in Violation of the FHAA, the ADA, and the Rehabilitation Act

The FHA makes it unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1). The statute defines discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). These protections apply to the Doe Plaintiffs due to their status as nursing home residents. *See Assisted Living Associates of Moorestown, LLC v. Moorestown Township*, 996 F. Supp. 409 (D.N.J. 1998) (applying the FHAA to assisted living residents). Similarly, the ADA and the Rehabilitation Act prohibit all disability-based discrimination by a public entity or recipient of federal financial assistance, and these statutes also require reasonable accommodations be made if necessary for an equal opportunity to receive benefits from, or participate in, programs run by such entities. Since the requirements of the FHAA, ADA and Rehabilitation Act are essentially the same, courts have concluded that the FHAA analysis can be applied to ADA and Rehabilitation Act claims as well in such cases where claims are brought under all three statutes. *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 45-46 (2d Cir. 2002).

A plaintiff may prove a violation of the FHAA, ADA or Rehabilitation Act in one of three ways: (1) showing disparate treatment, also termed intentional discrimination, (2) showing disparate impact, or (3) showing a refusal to make reasonable accommodations. *Assisted Living Associates*, 996 F. Supp. at 434; *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003). All three types of claims apply to municipal zoning decisions. *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 151 (2d Cir. 1999). Plaintiffs claim that Defendant violated the FHAA, ADA and Rehabilitation Act by (1) disparately treating handicapped Doe Plaintiffs by enacting Ordinance 10-03; (2) disparately impacting persons with handicaps by enacting Ordinance 10-03, since it only applies to hospitals, nursing homes, and other facilities which would house such persons; and (3) failing to make a reasonable accommodation in its rules, policies and practices when such accommodations are necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling. (Compl. ¶¶ 33-41.)

Plaintiffs' "reasonable accommodations" challenge is, by its nature, an "as-applied" challenge. Such an allegation relies on the facts of each individual

7

application, and the Third Circuit has expressly held that "courts hearing reasonable accommodations challenges should ordinarily limit their review to the administrative record." *Lapid-Laurel v. Zoning Bd. of Adjustment*, 284 F.3d 442, 451 (3d Cir. 2002). The Third Circuit goes on to point out that "[t]his rule permits local land use boards to have the initial opportunity to provide reasonable accommodations to facilitate housing for the handicapped; it also comports with the tradition in American law that land use decisions are quintessentially local in nature." *Id.*; *see, e.g., FERC v. Mississippi*, 456 U.S. 742, 768 n.30 (1982) ("Regulation of land use is perhaps the quintessential state activity."). In *Lapid-Laurel*, the Third Circuit also noted that its decision implicitly agrees with the position adopted by other Circuits and courts that "most reasonable accommodations claims must first be presented to local land use boards" before being considered ripe for adjudication. 284 F.3d at 451 n.5; *see United States v. Village of Palatine*, 37 F.3d 1230 (7th Cir. 1994); *Oxford House-A v. City of Univ. City*, 87 F.3d 1022, 1024-25 (8th Cir. 1996); *Tsombanidis v. City of W. Haven*, 129 F. Supp. 2d 136 (D. Conn. 2001). Therefore, insofar as Plaintiffs' claims under any of these three statutes are based on Defendant's failure to make a reasonable accommodation, such claims are dismissed as they are not yet ripe for adjudication.

Plaintiffs' disparate treatment (or "intentional discrimination") and "disparate impact" claims under these statutes, however, are ripe for adjudication. Any allegations based on these theories do not require a showing of a failure on the part of Piscataway to make a reasonable accommodation. Instead, Plaintiffs' disparate treatment and disparate impact claims allege that the passage of Zoning Ordinance 10-03 was for a discriminatory purpose, and that the ordinance as written has a disparate impact on handicapped individuals. Since these challenges are facial attacks on the legislation and not "as-applied" attacks, the finality rule does not apply. *See County Concrete*, 442 F.3d at 164 (holding that the finality rule does not apply to claims challenging the mere enactment of a particular zoning regulation). Therefore, Plaintiffs' claims of disparate treatment and disparate impact in violation of the FHAA, the ADA, and the Rehabilitation Act are ripe for adjudication even without a "final decision" by the Zoning Board on Lapid's variance application.

### 5.    Count 4 – Discrimination in Violation of the NJLAD

Plaintiffs claim that pursuant to New Jersey Statute § 10:5-12.5, the Zoning Board is prohibited from discriminating against the Doe Plaintiffs based on their handicaps. (Compl. ¶ 54.) Regardless of whether this claim is ripe for adjudication at this stage, it must be dismissed for lack of jurisdiction. New Jersey Statute § 10:5-12.5 explicitly states that, "any person claiming to be aggrieved by an unlawful discrimination under this section shall enforce this section by private right of action in Superior Court." Courts in

this District have interpreted this provision to mean that federal district courts lack jurisdiction over claims of discrimination in land use policy by a municipality that arise under N.J. Stat. Ann. § 10:5-12.5.  *See Kessler Inst. for Rehabilitation v. Mayor of Essex Fells*, 876 F. Supp. 641 (D.N.J. 1995).  As such, Count 4 is dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

### 6.    Count 5 – Violation of the New Jersey MLUL

Finally, Plaintiffs claim that the "actions of the Township in adopting Ordinance 10-03 were arbitrary, capricious and unreasonable, as well as contrary to and an exceedance of the Township's authority under the Municipal Land Use Law."  (Compl. ¶ 57.)  On its face, this claim is challenging only the adoption of the zoning ordinance itself, not any effect of the ordinance as-applied.  While zoning ordinances are presumptively valid under the MLUL, the presumption can be overcome by proof that the ordinance is arbitrary, capricious, or unreasonable.  *Rumson Estates, Inc. v. Mayor & Council of Borough of Fair Haven*, 177 N.J. 338, 350, 828 A.2d 317 (2003); *Pheasant Bridge Corp. v. Twp. of Warren*, 169 N.J. 282, 289-90, 777 A.2d 334 (2001), *cert. denied*, 535 U.S. 1077 (2002); *House of Fire Christian Church v. Zoning Bd. of Adjustment of City of Clifton*, 379 N.J. Super. 526, 541 (App.Div. 2005).  Since Plaintiffs' claim under the MLUL is a facial challenge to the passage alone of Ordinance 10-03, this count is ripe for judicial review.

### B.    Plaintiffs' Motion for Preliminary Injunction

Since most of Plaintiffs' claims survive Defendant's motion to dismiss, the Court must now address Plaintiffs' motion to enjoin Defendant from enforcing Ordinance 10-03.  A plaintiff seeking a preliminary injunction must show the following: (1) a likelihood of success on the merits; (2) irreparable harm will be suffered if the injunction is denied; (3) preliminary relief will not result in greater harm to the nonmoving party; and (4) public interest favors granting relief.  *Kos Pharmaceuticals v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).  The first two factors are considered threshold factors, and only if those two showings are made does the Court need to consider the second two factors.  *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002).  A preliminary injunction is considered "an extraordinary remedy" and "should be granted only in limited circumstances."  *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) (quotation omitted).

### 1.    Likelihood of Success on the Merits

The Court has dismissed Plaintiffs' claims of failure to make reasonable

accommodations under the FHA, ADA and Rehabilitation Act, as well as Plaintiffs' claim under the NJLAD.  Therefore, the following allegations remain: (1) disparate treatment, or intentional discrimination, under the FHA, ADA and Rehabilitation Act, (2) disparate impact under the FHA, ADA and Rehabilitation Act, and (3) that the passage of Ordinance 10-03 was arbitrary, capricious and unreasonable under the MLUL.  Plaintiffs' likelihood of success under each of these theories will be addressed in turn.

To succeed on a claim of disparate treatment, Plaintiffs must show that either Ordinance 10-03 was passed with the desire to discriminate and that this discriminatory purpose was a "motivating factor" behind the challenged action, or that the regulation uses a facially discriminatory classification.  *Cmty. Servs. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3d Cir. 2005).  Since the Ordinance itself does not use a facially discriminatory classification, the burden is on Plaintiffs to show that discriminating against future residents of a skilled nursing home was a motivating factor behind the passage of Ordinance 10-03.  As evidence of this discriminatory purpose, Plaintiffs cite the timing of the ordinance, the specificity of the ordinance (alleging that Lapid's site is the only developable site impacted), and the fact that hospital development on other flood-prone properties is not prohibited.  (Pls.' Moving Br. at 10.)  While these allegations certainly state a disparate treatment claim, at this stage they do not show a likelihood that Plaintiffs will meet their burden and demonstrate that discriminating against the Doe Plaintiffs was a "motivating factor" behind Ordinance 10-03.

As further evidence of a discriminatory purpose, supporting Plaintiffs' claim of disparate treatment as well as Plaintiffs' MLUL claim, Plaintiffs point to the fact that the ordinance "circumvents" the DEP's delineation of the boundaries of the Flood Hazard Area around the Raritan River.  (Pls.' Moving Br. at 11.)  Specifically, Plaintiffs state that since under the MLUL a municipal land use ordinance can designate and/or regulate areas subject to flooding only where "otherwise necessary in the absence of appropriate flood hazard area designations...or floodway regulations...or minimum standards for local flood fringe area regulation," N.J. Stat. Ann. 40:55D-65(e)(2), the Ordinance is invalid since the DEP already has established the Flood Hazard Area designations for Raritan River.  (Pls.' Moving Br. at 17.)  However, as Defendant points out, Lapid's proposed project is not within the DEP-regulated Flood Hazard Area.  (See Pls.' Reply Br. at 2; Szalay Aff. ¶ 6.)  Thought the DEP has established a Flood Hazard Area for the Raritan River, outside of that Flood Hazard Area Piscataway is free to zone an area as subject to flooding under N.J. Stat. Ann. 40:55D-65(e)(2).  Therefore, Ordinance 10-03 is allowable under N.J. Stat. Ann. 40:55D-65(e)(2), is not preempted by the state statute, and is not "circumventing" the DEP for a discriminatory purpose under the FHAA, ADA or Rehabilitation Act.  As such, Plaintiffs have failed to show a likelihood of success on the merits for their claim of disparate treatment, or their claim of a violation of MLUL based

10

on circumvention of the DEP.

Plaintiffs also attempt to show a likelihood of success on the merits of their disparate impact claim.  In order to establish a *prima facie* case of disparate impact, Plaintiffs must show that Piscataway's act of enacting Ordinance 10-03 had a greater adverse impact on a protected group than on others.  *Oxford House, Inc. v. Cherry Hill*, 799 F. Supp. 450, 461 (D.N.J. 1992).  "Once plaintiffs establish a *prima facie* case, the burden shifts to the defendant to demonstrate some legitimate, nondiscriminatory reason for their action, and that no less discriminatory alternatives were available."  *Id.*  It is unclear at this point whether the Ordinance will have a greater adverse impact on the handicapped than on others.  The ordinance does not just restrict the building of assisted living homes or skilled nursing homes, but instead applies more broadly to all hospitals.  Additionally, Defendant has offered a plausible nondiscriminatory reason for their action, claiming that the Ordinance was motivated by a concern regarding evacuation of such dwellings should there be a flood.  At this juncture, though Plaintiffs' disparate impact claim may have merit, a likelihood of success has not been shown.

Finally, as for Plaintiffs' MLUL claim, zoning ordinances are considered presumptively valid and the party challenging the ordinance bears the burden of overcoming such a presumption.  *Rumson Estates, Inc. v. Mayor & Council of Borough of Fair Haven*, 177 N.J. 338, 350, 828 A.2d 317 (2003) (further stating that "a zoning ordinance is 'insulated from attack' by a presumption of validity").  As addressed above, a plaintiff can only overcome such a presumption by showing that the zoning ordinance is arbitrary, capricious, or unreasonable.  *Pheasant Bridge Corp. v. Twp. of Warren*, 169 N.J. 282, 289-90, 777 A.2d 334 (2001), *cert. denied*,  535 U.S. 1077 (2002).  Here, Plaintiffs argue that the 500 foot delineation used in Ordinance 10-03 is arbitrary and capricious because it "lacks the scientific basis necessary for an accurate, predictive regulation of land uses adjacent to the Raritan River."  (Pls.' Reply Br. at 3).  However, to succeed on the merits, Plaintiffs must satisfy a high standard to show that the ordinance is clearly arbitrary, capricious, or unreasonable.  Plaintiffs' allegation that the Ordinance lacks a scientific basis is not enough to demonstrate a likelihood of being able to show that the ordinance is arbitrary, capricious, or unreasonable.

## 2.     Irreparable Harm

In order to demonstrate irreparable harm, Plaintiffs must show a potential harm which cannot be redressed by a legal or equitable remedy.  While Plaintiffs argue that such irreparable harm is implied by the FHAA, and cite to some cases that have adopted this theory, those cases all address situations where the harm imposed is eviction or some other direct harm to known Plaintiffs.  Additionally, even where a presumption of

irreparable harm is applied, the defendant is still given a chance to show that any injury that may occur is not irreparable. *See Oxford House, Inc. v. Cherry Hill*, 799 F. Supp. 450, 463 (D.N.J. 1992). Here, the only known plaintiff at this point is Lapid, and the harm imposed on Lapid should they later win at trial is delay in building the Facility. The Doe Plaintiffs will not be irreparably harmed as these hypothetical residents of the proposed Facility are only looking for a declaratory judgment allowing the Facility to be built, and are not in any current danger of harm. Plaintiffs have failed to show irreparable harm, and have failed to demonstrate a likelihood of success on the merits, and as such Plaintiffs' motion for a preliminary injunction is denied.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is **DENIED**, and Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.

s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

12